IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE LINCOLN ELECTRIC COMPANY, *et al.*, | ) ) ) | CASE NO.: 1:09 CV 1886 |
| Plaintiffs, | ) ) | |
| v. | ) ) | JUDGE DONALD C. NUGENT |
| NATIONAL STANDARD, LLC, CORPORATION, | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) ) | |

This matter is before the Court on five separate motions for summary judgment: Defendant National Standard's Motion For Summary Judgment of Invalidity Under 35 U.S.C. § 102(b), (ECF #213); National Standard's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 112, (ECF #214); National Standard's Motion for Partial Summary Judgment That Tru Trac Wire Made Before March 2008 Does Not Infringe Lincoln's Patents, (ECF #217); National Standard's Renewed Motion for Summary Judgment That It's Tru Trac Weld Wire Does Not Infringe the Claims of the '864 and '454 Patents As Construed Pursuant to This Court's Markman Ruling, (ECF #218); and, Plaintiff, Lincoln's Motion for Summary Judgment on Counterclaims X and XI, (ECF #215). Each side filed an opposition in response to the opposing

party's summary judgment motion(s), and each filing party submitted a reply in support of its original position.  (ECF # 231, 232, 234, 235, 236, 256, 257, 258, 259, 260).  Both sides also filed surreplies in opposition to the motions for summary judgment.  (ECF # 261, 262, 263, 264, 265).  The Court has thoroughly reviewed all of the parties' submissions, including all exhibits, and relevant legal authority.  The Court also held oral argument on the combined motions on May 24, 2012.  Having considered all of the information presented, the Court finds that factual questions relevant to each of the motions remains, and all of the summary judgment motions are, therefore, DENIED.

## **FACTS AND PROCEDURAL HISTORY**[1]

**A.  Procedural History**

Lincoln Electric Company and Lincoln Global, Inc. (collectively "Plaintiffs") design, develop, manufacture, and sell welding products and accessories, including, but not limited to, weld wire sold in bulk packages.  (ECF # 1 at ¶ 2.)  On August 12, 2009, Plaintiffs filed a three-count Complaint against National Standard, LCC ( "Defendant"), alleging that it violated three separate patents, namely U.S. Patent Nos. 6,708,864, 6,820,454, and 6,745,899 ("the '864 patent", "the '454 patent", and "the '899 patent," respectively).  Defendant filed an Answer and Counterclaim, which was amended on December 23, 2009. (ECF #25).

Plaintiffs filed a motion to dismiss the counterclaim, which was denied.  (ECF #32, 44).

---

[1] The facts and procedural history have been taken from the undisputed statements set forth in the parties' briefs, and official court records.  In accordance with the applicable standards on a motion for summary judgment, genuine questions of material fact have been resolved in favor of the non-moving party.

The Court granted Defendant leave to file its second Amended Answer and Counterclaim in March of 2010, (ECF #47), which was followed by another motion to dismiss. (ECF #48). Plaintiffs withdrew a portion of their motion to dismiss (ECF #61), and the remainder was rendered moot upon Defendants filing of the Third Amended Answer and Counterclaims. (ECF #102).

On May 12, 2010, Defendant filed a Motion for Partial Summary Judgment, arguing that its coreless weld wire drums (and payouts) do not infringe claim 28 of the '899 patent. (ECF # 52.) On June 23, 2010, Defendant also filed a Motion for Partial Summary Judgment that its NS-115 CopperFree Tru-Trac weld wire does not infringe the asserted claims of the '864 patent or the '454 patent. (ECF # 70). The Court held a hearing on January 12, 2011, during which all counsel presented oral argument on the pending Motions. (ECF # 116.) Both motions were denied. (ECF # 133).

A claim construction hearing was held on May 31, 2011, (ECF #147), and the Court issued its ruling on claim construction issues on June 3, 2011. (ECF #148). Based on the results of the claim construction hearing, the parties filed a Joint Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,745,899, which was granted by the Court. (ECF #161, 162). Following the claim construction the parties filed a myriad of non-dispositive motions centered around discovery, sanction requests, and other issues. The Court held oral argument on all the unresolved non-dispositive motions on April 5, 2012, and issued opinions on those issues following an opportunity for additional briefing. (ECF #251, 252, 253, 254, 255).

The parties are now before the Court on five motions for summary judgment that have been fully briefed and argued. (ECF # 213, 214, 215, 217, 218). Defendant has filed four

-3-

motions for summary judgment relating to the validity of the patent, and/or the issue of infringement.  Plaintiffs seek summary judgment on the Defendant's counterclaims for attempted monopolization in violation of the Sherman Act § 2, 15 U.S.C. § 2.

**B. The Claims**

Lincoln's '864 and "454 patents relate to weld wire that is imparted "shape memory," designed to result in consistent weld placement and higher quality welds.  (ECF # 113 at 1-2.) More specifically, the '864 patent concerns the weld wire, while the '454 patent addresses methods of forming the wire.  (*Id*. at 1.)   In Count I of the Complaint, Plaintiffs allege that Defendant "makes, uses, imports, sells and/or offers for sale bulk welding wire in containers, including but not limited to Defendant's bulk wire drums and spools labeled as NS-115 ('infringing product'), that infringe at least claims 1, 3, 6, 11 and 12 of the '864 [p]atent in violation of 35 U.S.C. § 271."  (*Id.* at ¶ 14.)  In addition to Defendant's own alleged infringement, Plaintiffs claim that Defendant has induced others to infringe the '864 patent.  (*Id.* at ¶ 15.)  Plaintiffs seek to enjoin Defendant from infringement and seek an accounting to determine the amount of monetary damages suffered as a result of the alleged infringement.  (*Id.* at ¶¶ 16-18.).  Count III of the Complaint also mirrors Count I, with the exception that it pertains to Defendant's bulk wire drums and spools that allegedly infringe upon "at least claims 1, 5 and 14 of the '454 [p]atent in violation of 35 U.S.C. § 271."  (*Id.* at ¶ 27.).

Defendant's Counterclaims X and XI allege that Lincoln has attempted to monopolize the market for bulk weld wire in the United States by bringing sham or baseless patent infringement suits against its competitors.  Defendant also alleges that Lincoln fraudulently obtained the

-4-

patents it has attempted to enforce them against competitors to drive them out of business and thereby prevent or hinder competition in this market.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57

F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  On issues for which the non-movant carries the burden of proof, the moving party need not negate the claims; it can simply rely on the absence of the essential elements in the pleadings, depositions, and answers to interrogatories.  *St. Gobain Autover USA, Inc. V. Xinyi Glass N. America, Inc.*, 666 F.Supp.2d 820, 824 (N.D. Ohio 2009).

Because all patents issued by the United States enjoy a statutory presumption of validity, Haldex bears the burden of proving invalidity under 35 U.S.C. §§ 102 and 103 by clear and convincing evidence.  *See* 35 U.S.C. §282; *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008); *Ocean Innovations, Inc. v. Quarterberth, Inc.*, No. 1:03CV913, 2009 WL 1850321, at *2 (N.D. Ohio June 26, 2009).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.  However, if, as in this case, the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its standard of proof, the burden then shifts to the non-mover.  The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the

>adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

**A.      National Standard's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 102(b).**

If an accused product is placed on sale prior to the "critical date," associated with a patent, the asserted patent is "anticipated" and is invalid under 35 U.S.C. § 102(b). *Vanmoor v. Wal-Mart Stores, Inc*., 201 F.3d 1363, 1366 (Fed. Cir. 2000). Although a defense of anticipation generally requires a showing, by clear and convincing evidence, that each and every element of that specific claim is disclosed in the previously sold product, that burden is satisfied when the patentee or plaintiff alleges that the product infringes the patent. *See, e.g., Id*. (citing *Evans Cooling Sys. Inc. V. GMC*, 125 F.3d 1448, 1451 (Fed. Cir. 1997); *Bennett Regulator Guards, Inc. v. Canadian Meter Co., Inc*., 184 F.App'x 977, 978 n.1 (Fed. Cir. 2006). National Standard argues that claims 1-6 and 12-14 of the '864 Patent, and claims 1 and 4-24 of the '454 Patent are invalid as anticipated because the same National Standard products that Lincoln alleges are

infringing have been manufactured and sold by National Standard, without material changes in the product or processes, since before the June 15, 2000 critical date associated with Lincoln's provisional patent application.

In support of its position, National Standard submitted the affidavits of three former employees, James Harbaugh, Carlis Cassel, and Scott Lundberg; and a current employee, David Carrier. The employees generally testified that to the best of their knowledge the Tru-Trac machines have formed Tru-Trac wire in the same way since the late 1980s, and that the way the machines operate has not been significantly modified over the course of the years. There is testimony that some changes and upgrades were made, but the affiants appear to agree that any such changes did not affect the shape of the wire. (ECF #213, Ex. 1-4).

Lincoln, in response, cites to evidence in the form of a memorandum and testimony by Otto Ferguson III, which would indicate that the Tru-Trac wire manufactured prior to the critical date, and the Tru-Trac wire manufactured after the critical date may have had different wave shapes. Further, Lincoln cites to testimony from National Standard's current and former employees in which they admit that some changes were made to the manufacturing equipment used to produce the Tru-Trac wire, and that adjustments to the manufacturing process were made to address "cast and helix" problems associated with the earlier version of the wire. They have also submitted testimony to show that "cast and helix" problems are related to the shape of the wire. There is also some evidence to suggest that changes to the shape of the Tru Trac wire could have been made by means other than an alteration to the Tru-Trac machines mentioned in the affidavits of the current and former National Standard employees provided by National Standard. Lincoln contends that changes to the shape of the wire could have been accomplished

-8-

by altering the lay-out of the machines, by adding or altering pulleys used in conjunction with the manufacturing machines , and by adjusting or reorienting "killer rolls" (otherwise known as "casting rolls" or "straightening rolls"). (ECF #236).

In seeking summary judgment of non-infringement for anticipation under 35 U.S.C. § 102(b), Defendant must demonstrate that there is no genuine issue of material fact as to whether its product was the same as the patented product in every relevant way prior to the critical date of June 15, 2000. Here, the Court finds that Defendant is unable to satisfy that burden. Based upon the argument and evidence before it, the Court finds that there is a genuine issue of material fact as to whether the Tru-Trac wire, and/or the machines or manufacturing process used to produce Tru-Trac wire, changed in any material way on or after the critical date for Lincoln's patent application. Given this genuine issue of material fact, Defendant's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 102(b), (ECF #213), is denied.

**B.    National Standard's Motion For Summary Judgment of Invalidity Under 35 U.S.C. § 112.**

National Standard argues that Lincoln's '864 and '454 patents fail to describe with an adequate level of detail how to make the wire described in its patents. Further, it claims that Lincoln failed to include the inventors' best mode of making the invention as required under 35 U.S.C. § 112, ¶ 1. The enablement requirement is satisfied if the patent specifications are sufficient to enable one skilled in the art to practice the claimed invention. *See Streck, Inc. V. Research & Diagnostic Sys., Inc*., 665 F.3d 1269, 1289 (Fed. Cir. 2012). The patent applicant does not need to disclose in the specification that which is already known to and available to one

of ordinary skill in the art. *Koito Mfg. Co. v. Turn-Key-Tech LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004).

In this case the parties have not provided sufficient evidence for the Court to make a determination as to whether a person of ordinary skill in the art could practice the invention based on the disclosures made in the patent specification.  National Standard refers to the specification and notes what it considers to be material omissions that would preclude practice of the invention.  Further, it cites to deposition testimony from witnesses who indicated that Lincoln did not manufacture or know how to manufacture the invention until after the patent application was filed.  Lincoln, for its part, provides affidavits from persons who are allegedly skilled in the relevant art who attest that the specification is sufficient to allow anyone of ordinary skill in the art to practice the invention, but they do not cite to the portions of the specification that would teach this process.  Further, Lincoln argues that it was able to make the invention when the application was filed, but had difficulty perfecting a manufacturing process that would properly replicated the invention in commercial amounts and/or in a commercial setting.  It also argues that National Standard cannot claim a failure to disclose best practices while simultaneously arguing that Lincoln didn't know how best to manufacture the invention at the time of its patent application.

Based on the parties submissions, and the arguments presented at the summary judgment hearing, the evidence available to the Court at this juncture appears to include testimony that is either contradictory or capable of two different interpretations.  Either reading of the testimony precludes summary judgment at this stage.  National Standard's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 112, (ECF #214), must, therefore, be denied.

**C.    National Standard's Motion for Partial Summary Judgment That Tru Trac Wire Made Before March 2008 Does Not Infringe Lincoln's Patents.**

National Standard seeks summary judgment on any infringement claims against Tru Trac wire manufactured prior to March of 2008.  National Standard bases their request on the premise that Lincoln has not been able to provide any evidence showing that Tru Trac wire manufactured prior to March of 2008 infringed the Patent.  National Standard contends that Lincoln has not tested any wire produced prior to the March 2008 date, and that no such wire is available for testing.  It, therefore, concludes that Lincoln cannot satisfy its burden of showing that wire manufactured prior to that date ever infringed Lincoln's patent.  Although the argument has some initial appeal, National Standard has, itself, provided evidence that contradicts its position on this matter.  In it briefing of a separate motion for summary judgment, the Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 102(b), (ECF #213), National Standard argued, and presented evidence to support the contention, that Tru Trac wire has not changed its shape or undergone any other material changes since it began production in the late 1980s.   Having provided affidavits testifying that no material changes have been made to Tru Trac since the late 1980s, National Standard cannot now argue that it is entitled to summary judgment based on Lincoln's inability to test any Tru Trac wire manufactured between June of 2000 and March of 2008.  National Standard's Motion for Partial Summary Judgment That Tru Trac Wire Made Before March 2008 Does Not Infringe, (ECF #217), is, therefore, denied.

**D.    National Standard's Renewed Motion for Summary Judgment That It's Tru Trac Weld Wire Does Not Infringe The Claims of the '864 and '454 Patents As Construed Pursuant to This Court's Markman Ruling.**

National Standard contends that there is no factual question as to whether Tru Trac's wire

-11-

infringes Lincoln's '864 and '454 Patents.  The parties, however, have presented evidence and demonstrations that seem to contradict each other's results, and have submitted competing expert reports and explanations as to the scientific significance of the observable results.   As is to be expected, the parties have differing explanations and descriptions of what happens when the elastic tension on the Tru Trac wire is cut, and how that relates to the specifications set forth in Lincoln's patents.  Each emphasizes a different aspect of the visual demonstrations and neither fully explains away the explanations provided by the other party.   The factual question of whether Tru Trac wire is formed by plastic deformation into an undulating curve in a single plane in accordance with the requisite measurements in the patents, or whether the imparted shape memory of the product is an circular or "O" shape clearly remains a disputed fact that cannot be resolved on summary judgment.  National Standard's Renewed Motion for Summary Judgment That It's Tru Trac Weld Wire Does Not Infringe The Claims of the '864 and '454 Patents As Construed Pursuant to This Court's Markman Ruling (ECF #218) is denied.

### E.     Lincoln's Motion for Summary Judgment on Counterclaims X and XI.

National Standard's Counterclaims X and XI bring claims against Lincoln for attempted monopolization in violation of section 2 of the Sherman Act.  National Standard alleges that Lincoln has attempted to monopolize the bulk weld wire market by bringing sham litigations against its competitors based on fraudulently obtained patents. To prevail on such a claim, National Standard must prove (1) that Lincoln has engaged in predatory or anticompetitive conduct, (2) with a specific intent to monopolize, and (3) with a dangerous probability of achieving monopoly power.  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

Lincoln has not challenged the first two elements for purposes of its summary judgment motion. However, it argues that National Standard has not provided any evidence that could support a finding of the third element of the claim, i.e., that Lincoln had a dangerous probability of achieving monopoly power. Further, Lincoln argues that as a matter of law Counterclaim X should fail because its patent infringement claims are not objectively baseless.

Taking Lincoln's second argument first, the Court does not yet have before it sufficient evidence to determine one way or the other whether Lincoln's claims have an objectively sufficient factual basis to preclude National Standard's antitrust claims. The evidence presented at trial, and the credibility determinations that can occur only after hearing the testimony in a trial setting are necessary to evaluate whether there was an objectively sufficient factual basis for Lincoln to bring a good faith claim for patent infringement in this case.

As for the evidence of Lincoln's potential monopoly power, the Court cannot say as a matter of law that Lincoln would not have had a dangerous probability of monopolization if it succeeded in its alleged "plot" to bring baseless litigation against its competitors in order to increase their costs of business and run them out of the bulk weld wire manufacturing business. National Standard has provided some evidence that the competitors who have been sued each held a low market share; that Lincoln brought suit not against select competitors, but against every significant competitor, which would have resulted in a virtual elimination of any competition if they had succeeded in their alleged plan; that there are significant economical barriers for competitors seeking to enter the market; that their own litigation costs to this point have exceeded the profit they receive from the product at issue; and, that it would be impossible or nearly impossible for any competitor to produce a bulk weld wire product that Lincoln would not

-13-

consider to be a violation of its patent. Also in support of their contentions, National Standard has submitted an expert opinion which concludes that Lincoln's litigious behavior created a "substantial likelihood that Lincoln would obtain monopoly power" and a "substantial probability that it would either obtain[] monopoly power ... or enhance[] its monopoly power." (Pleatsikas Rep. 18, 19).

Lincoln makes several arguments as to why it would not be able to monopolize the bulk weld wire market, even if it did successfully bring lawsuits against all of its competitors. Lincoln contends that the product is a commodity sold solely on the basis of its price and without regard to other differentiating features; none of the companies it has previously sued have, in fact, gone out of business; and, that at a 40-50% market share, it does not currently have sufficient market share to constitute a potential monopoly. These arguments fail to prove that Lincoln does not have a dangerous probability of monopolizing the market if it were to succeed in its alleged scheme to use its patents in a fraudulent and/or predatory manner. First, National Standard has provided evidence to counter the argument that bulk weld wire is a commodity. Not only is there evidence that Lincoln has continued to gain market share despite having higher prices than its competitors, the lengths to which Lincoln has gone to develop improved wire, differentiate its product from its competitors, protect its alleged inventions and improvements, and litigate against other competitors who have allegedly infringed its patents on such products, all weigh against a finding that the bulk weld wire is treated solely as a commodity without consideration of differentiating product features by its consumers. Lincoln's treatment of relevant products belies their assertion that bulk weld wire is a commodity and that a consumer's decision to buy the product is driven directly by price.

Also, as pointed out by National Standard, a company claiming potential monopolization need not show that any competitors have, in fact, been forced out of business. *See, e.g., U.S. v. American Airlines, Inc.*, 743 F.2d 1114, 1118 (5th Cir. 1984); *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 474-75 (5th Cir. 2000). Just because their competitors have not gone out of business does not mean that Lincoln does not have the ability to exercise monopolistic control over the relevant market. Businesses often participate in more than a single market, and as such, "going out of business" is not necessarily a marker of how they operate within the precise market at issue in this case. Further, as was mentioned at oral argument, at least some of the competitors that Lincoln has sued have entered into a licensing agreement with Lincoln. A licensing agreement may allow the "competitor" to remain in business in the relevant market, however operating under a licensing agreement with Lincoln does not dilute Lincoln's control over the market. If Lincoln remains in control of the supply amounts and pricing of the product by virtue of its own market share and its control over the licensing rights of its, once competition, consumers would still be subject to all of the dangers of a monopolized market.

Finally, Lincoln asserts that if it does create a monopoly by enforcing its patents, that monopoly is legitimate and legal. It is true that if Lincoln is merely enforcing valid, legitimate patents against competitors that have in fact infringed those patents, any potential monopoly that results cannot be the basis for the antitrust claims asserted by National Standard. However, National Standard is not claiming an antitrust violation based on the legal enforcement of a legitimate patent; their claims presume and require a finding that Lincoln's patents are either not valid, or that they are being litigated in an objectively baseless fashion. For purposes of this motion, Lincoln has not challenged the sufficiency of National Standard's evidence on this point

and it remains a question for trial.  For these reasons, Lincoln's Motion for Summary Judgment on Counterclaims X and XI, (ECF #215), is denied.

## **CONCLUSION**

For the reasons set forth above, National Standard's Motion For Summary Judgment of Invalidity Under 35 U.S.C. § 102(b), (ECF #213); National Standard's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 112, (ECF #214); National Standard's Motion for Partial Summary Judgment That Tru Trac Wire Made Before March 2008 Does Not Infringe Lincoln's Patents, (ECF #217); National Standard's Renewed Motion for Summary Judgment That It's Tru Trac Weld Wire Does Not Infringe the Claims of the '864 and '454 Patents As Construed Pursuant to This Court's Markman Ruling, (ECF #218); and, Lincoln's Motion for Summary Judgment on Counterclaims X and XI, (ECF #215), are all DENIED.  IT IS SO ORDERED.

       /s/ Donald C. Nugent
      Judge Donald C. Nugent
      United States District Judge

Date:   June 11, 2012